IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**GARY E. KNOTTS**                                                                **PLAINTIFF**

      VS.                            Civil No. 2:17-cv-02006-MEF

**NANCY A. BERRYHILL, Commissioner**                                              **DEFENDANT**
**Social Security Administration**

## MEMORANDUM OPINION

Plaintiff, Gary E. Knotts, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act (the "Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405 (g).

### I.    Procedural Background

Plaintiff filed his applications for supplemental security income (SSI) and disability insurance benefits (DIB) on July 26, 2011, due to left ankle problems and ADHD. (ECF No. 17, pp. 71-77, 83-89). Plaintiff alleged an onset date of December 30, 2009. (ECF No. 17, pp. 71, 83). His claims were denied initially on September 7, 2011, and upon reconsideration on October 28, 2011. (ECF No. 17, pp. 58-62). An administrative hearing was held on April 24, 2013 in Fort Smith, Arkansas before the Hon. Edward M. Starr, Administrative Law Judge ("ALJ"). (ECF No. 17, pp. 259-288). Plaintiff appeared in person and was not represented by counsel, although it was

noted that he had sought counsel. (ECF No. 17, pp. 261, 263-264). On May 13, 2013, the ALJ requested the opinion of a Vocational Expert ("VE"), Debra Steele, via mailed interrogatories. (ECF No. 17, pp. 133-139). Dr. Steele completed and signed the form on May 19, 2013. (ECF No. 17, p. 137).

By written decision dated July 3, 2013, the ALJ found Plaintiff's anxiety and disorder of the ankle to be severe, but that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (ECF No. 17, p. 16). After discounting Plaintiff's credibility, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, but he could understand, remember, and carry out only simple, routine and repetitive tasks; respond to usual work situations, routine work changes, and simple, direct, and concrete supervision; and, occasionally interact with co-workers and the public. (ECF No. 17, p. 18). With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform work as a surveillance system monitor, charge account clerk, addressing clerk, and photo copy document preparer. (ECF No. 17, p. 21).

On November 7, 2016, the Appeals Council denied Plaintiff's request for review. On December 16, 2016 the Appeals Council entered an Order adding two exhibits consisting of correspondence from the Plaintiff to the record. (ECF No. 17, p. 10). On the same date, the Appeals Council set aside its earlier denial to consider the additional information, but it again denied Plaintiff's request for review. (ECF No. 17, p. 5). Subsequently, Plaintiff filed this action. (ECF No. 1). Both parties have filed appeal briefs (ECF Nos. 10, 12), and the case is ready for decision.

## II. Evidence Presented

An administrative hearing was held on April 24, 2014. Plaintiff appeared in person without counsel. (ECF No. 17, p. 259). Plaintiff had tried to procure counsel from Binder & Binder, but he was unable to do so before the hearing. (ECF No. 17, p. 263).

Plaintiff testified that he only made it to the 11th grade in school, and he never completed a GED. (ECF No. 17, p. 262). His most recent long-term employment was with Jensen's Enterprises in 2010. (ECF No. 17, p. 267). He was reportedly let go due to losing tools and tightening drain plugs too tight, both of which he blamed on his psychological impairments. (ECF No. 17, pp. 274-275). Thereafter, he worked at Sonic for a short time but was let go because he was getting orders wrong. (ECF No. 17, p. 275).

Plaintiff had been incarcerated for battery until approximately one month prior to the administrative hearing. (ECF No. 17, p. 272). He blamed his actions on his failure to take his medication. (ECF No. 17, p. 267). While imprisoned, Plaintiff indicated he was not assigned to work duty because of his ankle and mental impairments. (ECF No. 17, p. 274).

Plaintiff listed his physical and mental conditions as ADHD and left ankle problems in his Disability Report. (ECF No. 17, p. 94).

On March 2, 2011, Plaintiff presented at Western Arkansas Counseling and Guidance Center ("WACGC") for a diagnostic evaluation. (ECF No. 17, p. 142). He complained of significant social discomfort rendering him unable to maintain employment. (*Id.*). Plaintiff indicated, however, that he had worked successfully for approximately two years changing oil, but he quit when they asked him to train others. (ECF No. 17, p. 144). He also reported difficulty with restlessness, anger, and road rage, as well as having an extensive criminal history involving

violence. (ECF No. 17, p. 144). Jerry Stearmen, LPE, completed the exam and offered diagnoses of social phobia and avoidant personality disorder. (ECF No. 17, p. 147).

On April 4, 2011 Plaintiff went to the WACGC for a diagnostic evaluation with Advanced Practical Nurse Alice Slavens. (ECF No. 17, pp. 148-150). Plaintiff reported irritability and an inability to concentrate that had worsened with age. (ECF No. 17, p. 148). He denied any chronic medical conditions, surgery, or current medication. (*Id.*). Plaintiff stated that he does not like to be around people, especially crowds. (ECF No. 17, p. 149). Despite having a learning disability and being in special education, he was never tested for ADHD, although he felt he had the symptoms. (*Id.*). APN Slavens diagnosed ADHD, social phobia, panic disorder with agoraphobia, and avoidant personality disorder, and she prescribed Straterra. (ECF No. 17, p. 150).

On April 12, 2011, APN Slavens and Dr. Angela Chapman completed a master treatment plan for the Plaintiff. The diagnoses were social phobia, panic disorder with agoraphobia, and avoidant personality disorder. (ECF No. 17, pp. 151-152). ADHD was notably absent from the list of diagnoses.

On August 2, 2011, Plaintiff returned to the WACGC where he was again seen by APN Slavens. (ECF No. 17, p. 150). Although he had not been able to take his medication due to his incarceration, a mental status examination revealed good concentration, logical thought process, normal speech, and good to fair insight and judgment. (ECF No. 17, pp. 149-150).

On August 15, 2011, Plaintiff was seen by Dr. Chester Carlson for a general physical examination. (ECF No. 17, pp. 159-163). Plaintiff reported a diagnosis of ADHD six months prior, but he had only been on medication for about three months. (ECF No. 17, p. 159). As his primary reason for being unable to work, Plaintiff reported a previous left ankle injury for which he had undergone surgical correction. As a result, he experienced constant pain, and the ankle

would occasionally "give out." (*Id.*). A physical examination revealed a significantly decreased range of motion in the ankle (10/20 degrees) and significant pain with squatting and arising from a squatting position. (ECF No. 17, pp. 161-162). The diagnoses were ADHD and ankle pain and dysfunction; however, Dr. Carlson was unable to assess the severity of Plaintiff's ADHD. (ECF No. 17, p. 163). The only notation as to Plaintiff's mental status was that he was oriented to time, person, and place, and that he was fidgety. (*Id.*). Thus, Dr. Carlson concluded Plaintiff would have mild to moderate limitations in his ability to walk long distances, stand for long periods of time, and squat.

On September 2, 2011, Dr. Brad Williams reviewed the record and completed a Mental RFC Assessment wherein he found Plaintiff to be only moderately limited in seven of the 20 areas, with all others not significantly limited. (ECF No. 17, pp. 166-167). His limitations were in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to make simple work-related decisions; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; and, ability to set realistic goals or make plans independently of others. (ECF No. 17, pp. 164-165). Dr. Williams found the Plaintiff able to perform work where the interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote with few variables, little judgment, and with direct and concrete supervision. (ECF No. 17, p. 168). Plaintiff was evaluated under Listing 12.06, recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and impending doom occurring on the average of at least once a week.

Dr. Williams also noted the presence of "a medically determinable impairment that does not precisely satisfy the diagnostic criteria." (ECF No. 17, p. 175). He found, however, no evidence to establish the presence of the paragraph "C" criterion. (ECF No. 17, p. 181). Dr. Williams also evaluated Plaintiff's symptoms under Listing 12.08 for personality disorders. (ECF No. 17, p. 177). He concluded Plaintiff would have mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, and he had no episodes of decompensation. (ECF No. 17, p. 180).

On September 5, 2011, Dr. Bill Payne reviewed the record and found Plaintiff capable of performing work at the sedentary exertional level with no postural, manipulative, visual, communicative, or environmental limitations. (ECF No. 17, pp. 184-191).

On March 18, 2013, Plaintiff returned to the WACGC for another diagnostic evaluation performed by James Derrick, LPE. (ECF No. 17, p. 211). The stated reason for seeking help was substantial anxiety, social withdrawal, poor concentration and overall emotional distress. (*Id*.). There were no substantial changes to his social history. (ECF No. 17, pp. 211-212). It was noted that Plaintiff did not report suicidal thoughts, but he did report thoughts of harming others. Further, he indicated that the prescription Asterol was helpful when prescribed in 2012, but he was not taking any medications at the current time. (ECF No. 17, p. 212). Plaintiff was diagnosed with attention-deficit/hyperactivity disorder (ADHD) not otherwise specified (NOS), panic disorder with agoraphobia, and insomnia. (ECF No. 17, p. 213).

On March 25, 2013, a master treatment plan was created by LPE James Derrick, APN James Gattis, Clayton Mitchell, PhD, and Rachael Hopper, PhD. (ECF No. 17, p. 223). The diagnoses given were ADHD NOS and panic disorder with agoraphobia. (*Id*.).

On April 4, 2013 Plaintiff received a psychiatric assessment from APN Gattis at the WACGC. (ECF No. 17, p. 217). His chief complaints were insomnia and difficulty focusing and concentrating. Plaintiff also reported drinking excessive amounts of Red Bull and coffee daily, as well as dipping one can of tobacco per day. (*Id*.). APN Gattis diagnosed ADHD, combined type; anxiety disorder NOS, and rule out bipolar disorder. (ECF No. 17, p. 219). Plaintiff was prescribed Strattera and Saphris. (ECF No. 17, p. 220).

On April 18, 2013, Plaintiff returned to WACGC for a pharmacologic management visit with APN Gattis. (ECF No. 17, p. 221). Plaintiff stated he could not tolerate either medication and continued to report excessive energy related to his continued consumption of excessive amounts of caffeine. They discussed a transfer to the staff psychiatrist for an evaluation of ADHD. (ECF No. 17, p. 222).

### III. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions

from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in conjunction with his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## IV. Discussion

The Court must determine whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled, as defined in the Act, from the onset date of December 30, 2009, through the date of the ALJ's decision on July 3, 2013. Plaintiff raises three main points on appeal, which can be summarized as follows: (1) whether the ALJ erred in not assessing Plaintiff's ADHD and other mental impairments as severe; (2) whether the ALJ erred in not considering Hepatitis C as a disabling condition; and, (3) whether the ALJ properly assessed Plaintiff's RFC. (ECF No. 20, pp. 1-5). Each issue is addressed in turn.

The Court has carefully reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A. No Error in Step Two Analysis

Plaintiff argues the ALJ erred in finding only Plaintiff's anxiety to be severe. Plaintiff contends he also suffers from severe ADHD. (ECF No. 20, p. 1). In evaluating the evidence, the ALJ thoroughly examined the evidence pertaining to ADHD. (ECF No. 17, pp. 18, 20).

At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

The ALJ noted that while the alleged date of onset was in 2009, Plaintiff did not seek any mental health treatment until 2011, at which time Plaintiff denied any previous mental health treatment or use of psychiatric medications. (ECF No. 17, pp. 18-19). At Plaintiff's initial diagnostic evaluation at the WACGC, they found only mild impairment in attention and concentration, with no mention or diagnosis of ADHD. (ECF No. 17, pp. 17, 145, 147).

In May 2011, Plaintiff returned to WACGC with complaints of being easily distracted. Plaintiff expressed concerns that he had been suffering from ADHD symptoms since childhood. (ECF No. 17, p. 149). APN Slavens noted that he fidgeted, was a little restless, and exhibited some memory and concentration deficits. (*Id.*). The record for this visit shows diagnoses of ADHD, social phobia, and panic disorder. (ECF No. 17, p. 150). However, on August 2, 2011, when Plaintiff returned to WACGC and saw APN Slavens again, his concentration was adequate, and ADHD was not included as a diagnosis. (ECF No. 17, p. 152).

Despite Plaintiff's reports of continued ADHD like symptoms for which he self-medicated with caffeine, Plaintiff did not seek medical treatment for his mental impairments while incarcerated. (ECF No. 17, p. 278). After his release in 2013, Plaintiff returned to WACGC where LPE Derrick completed a new diagnostic evaluation. (ECF No. 17, pp. 211-215). While this evaluation did result in a diagnosis of ADHD, along with panic disorder with agoraphobia, the notes show that Plaintiff received a score of six, denoting "relative strength," in all but one of the areas of functional strengths and abilities, and a score of five, in the remaining area. (ECF No. 17, p. 213). The evaluation of Plaintiff's functional limitations and needs did not fall below a score of four, representing difficulty only "some of the time," except in the area of leisure entertainment which was scored at a three, indicating "moderately serious" limitations, which was his lowest score. (ECF No. 17, pp. 213-214).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, he did find his anxiety and ankle disorder to be severe. The ALJ, however, specifically discussed each alleged impairment in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments he found to be non-severe. *See* 20 C.F.R. § 404.1545(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ... including ... impairments that are not 'severe'"); § 404.1523(c) (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"); *see also Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); *Elmore v. Astrue*, 2012 WL 1085487, at *12 (E.D. Mo. March 5, 2012). Therefore, the ALJ's failure to include Plaintiff's ADHD as a severe impairment does not constitute reversible error.

Considering the evidence, the Court finds that the ALJ's step two determination is supported by substantial evidence and should be affirmed.

**B. RFC Assessment**

Plaintiff also objects to the ALJ's failure to consider the impact of his specially made shoes, despite the fact the ALJ did account for Plaintiff's ankle pain and its resulting limitation to movement in the RFC. (ECF No. 20, pp. 2-3).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. § 416.945; Social Security Ruling (SSR) 96-8p. It is assessed using all relevant evidence in the record. *Id*.

This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614, 619 (8th Cir. 2007), citing *Lauer v. Apfel*, 245 F.3d at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. §§ 416.927(e)(2), 416.946.

There is no evidence in the record of Plaintiff independently seeking treatment for his ankle impairment, and there is no indication of the source of the "special made medical shoe" that Plaintiff claims he cannot walk properly without. (ECF No. 20, p. 2). At Plaintiff's consultative examination, there is no record of Plaintiff's special shoes. (ECF No. 17, pp. 159-163). The physical examination did show a significantly decreased range of motion in the ankle and difficulty squatting, but no problems with gait/coordination or the ability to stand or walk without assistive devices or walk on heels and toes. (ECF No. 17, pp. 161-162). As there is no evidence of specialized medical shoes in the record, the ALJ was not required to consider said shoes.

The ALJ specifically considered both the pain and limitations in motion resulting from Plaintiff's ankle injury, including the fact that no physician had put any functional restrictions on his activities that would preclude work activity at the sedentary level and the fact that there was no evidence that Plaintiff took pain medication of any kind for this impairment. (ECF No. 17, p. 18). And, the Court finds that the ALJ properly accounted for Dr. Carlson's assessment of mild to moderate limitations to Plaintiff's ability to walk long distances, stand for long periods, and squat in his final RFC determination. As such, the ALJ's RFC determination is supported by substantial evidence and should be affirmed.

### C. No Error in Failure to Consider Hepatitis C.

Plaintiff argues that the ALJ erred in not considering the impact of his fatal disease, referring to hepatitis C. (ECF 20, p. 2). In this case, Plaintiff did not allege hepatitis C as a disabling condition in his initial Disability Report, and the record contains no diagnosis of or treatment for the disease. Further, the Plaintiff made no mention of his hepatitis C at the administrative hearing. (ECF No. 17, pp. 94, 232, 261-288). In fact, Plaintiff first raised the issue of hepatitis C as a potentially disabling condition in his submission to the Appeals Council. (ECF No. 17, pp. 241, 248). He did not, however, provide any explanation for failing to raise this issue earlier in the administrative process, and he provided no medical evidence to support his claim. He did inform the Appeals Council that medical records showing his diagnosis were available from the Arkansas Department of Corrections. (ECF No. 17, p. 251). However, the ALJ examined Plaintiff's records from his incarceration and found no record of medical treatment during that time. (ECF No. 17, pp. 19-20). Thus, the Appeals Council properly denied his request for review.

Accordingly, because the Plaintiff did not raise this condition before his appeal to the Appeals Council and has provided no medical evidence documenting his diagnosis or treatment,

the Court finds no error in the ALJ's failure to consider Plaintiff's alleged hepatitis C as a potentially disabling condition.

## V. Conclusion

Having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's Decision denying Plaintiff benefits, and the decision is affirmed. The Plaintiff's Complaint shall be dismissed with prejudice.

DATED this 31st day of July 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE